UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 11-102-GWU

DORINDA BRAUNTZ, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

      Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had. E.g., <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Dorinda Brauntz, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a lumbar strain with disc bulge, bilateral chondromalacia of the patella with chronic knee pain, a bipolar disorder by history, post traumatic stress disorder (PTSD), "rule out" pain disorder, and "rule out" undifferentiated somatoform disorder. (Tr. 19). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs

existing in the economy, and therefore was not entitled to benefits. (Tr. 21-26). The Appeals Council declined to review, and this action followed.

At the second of two administrative hearings, the ALJ asked the VE whether the plaintiff, a 24-year-old woman with a post high school education and work experience as a rest area supervisor, cashier/waitress/short order cook, and day care worker, could perform any jobs if she were limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, along with the option of sitting or standing at 30- to 45-minute intervals, and also had the following non-exertional restrictions. (Tr. 700). She: (1) could no more than "frequently" push and pull or use foot controls with the bilateral lower extremities; (2) could only occasionally climb, stoop, kneel, and crouch; (3) could never crawl or climb ladders, ropes, and scaffolds; (4) needed to avoid exposure to full body vibration and hazards such as unprotected heights or dangerous machinery; (5) was mildly to moderately limited in her ability to understand, remember, and carry out simple instructions or make judgments on simple work-related decisions, thus limiting her to performing simple, repetitive work activities and (6) was moderately to markedly limited in her ability to interact appropriately with the public, supervisors, and coworkers, to respond appropriately to usual work situations and to changes in a routine work setting, meaning that she would be limited to low stress, object-oriented work environments in which contact with coworkers, supervisors and the general public was both casual

and infrequent, with no more than routine or gradual changes in her work setting. (Tr. 700-702).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 702).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, or if there was an error of law.  <u>Blakley v. Commissioner of Social Security</u>, 581 F.3d 399, 405 (6th Cir. 2009).

The plaintiff alleged disability beginning January 9, 2006 due to depression, attention deficit hyperactivity disorder (ADHD), a bipolar disorder, migraines, and lower back and knee pain.  (Tr. 65).  The plaintiff only raises an issue regarding her mental impairments on appeal, however.  Specifically, she asserts that the hearing decision gave inadequate reasons for discounting the opinion of her treating psychiatrist, Dr. Arnold G. Shapiro.

The plaintiff testified that she saw Dr. Shapiro every month and a counselor in his office every week due to her mental problems.  (Tr. 675).  She had relationship problems, and also a post traumatic stress disorder due to having seen her brother commit suicide when she was six or seven years old.  (Tr. 694).  She claimed to have no friends, and an on and off relationship with her family.  (Tr. 697). She had had various disputes with her employers and altercations in retail establishments due to difficulty getting along with people.  (Tr. 698-99).  She

claimed to have poor sleep and nightmares even with medication. (Tr. 686, 694). However, she was able to take care of her three small children and went shopping with her mother every week or every other week. She also helped her oldest child with homework. (Tr. 687-90).

The office notes of Dr. Shapiro and a counselor in his office, Kellye Ledbetter, are extensive and cover a period from 2005 to January, 2009. (Tr. 168-204, 369-525, 590-603). Dr. Shapiro wrote a letter in August, 2007 stating that his patient was not able to work "at this time" because her bipolar symptoms were not under control, she was severely depressed, and had thoughts of hurting herself. (Tr. 198). He completed a mental residual functional capacity assessment form on November 7, 2007 stating that he had seen the plaintiff weekly since 2005 with a diagnosis of bipolar disorder and PTSD, adding that she was currently struggling with mood instability, intensive thoughts of her brother's death, and lack of sleep, although her prognosis was good with ongoing treatment. He indicated that she would have no useful ability to complete a normal work day and work week without interruptions from psychologically-based symptoms, and was unable to meet competitive standards of maintaining attention for two-hour segments, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without becoming unduly distracted, to make simple, work-related decisions, to accept instructions and respond appropriately to criticism from

supervisors, to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, to respond appropriately to changes in a routine work setting, to deal with normal work stress, understand, remember, and carry out detailed instructions, and to set realistic goals or make plans independently of others. (Tr. 130-31). She would also be absent more than three days a week from work. (Tr. 132). Finally, Dr. Shapiro completed a "verification of disability form" on June 16, 2008 which indicated that his patient met the definition of disability in § 223 of the Social Security Act. (Tr. 174-75).

  The only other mental health professional to give an opinion was Mark D. Kroger, a certified psychologist with autonomous functioning, who performed a one-time consultative examination on October 27, 2008. (Tr. 539). The plaintiff described her daily activities as living with her current boyfriend and three children. She had help with household chores, but could perform them if she was not in too much pain, got up in the morning to get her oldest son on the school bus and to care for her other two children, and in the evening fed and bathed the children and put them to bed. (Tr. 540-41). She also took her son to football practice in the evening. She claimed to have had learning disabilities, but could read and write. She also claimed to have had a head injury from being beaten by one of her ex-boyfriends, but said she got along "great" with her current boyfriend. (Tr. 541-42). Mr. Kroger noted that her facial expression was rather flat and vacant and her

activity level was sluggish but her motivation, persistence, and ability to follow instructions were adequate. (Tr. 542). Her recall and short-term memory were fair but she followed only one step of a three-step command, had mild difficulty reproducing a simple geometric figure, and difficulty interpreting abstract phrases. (Tr. 543). She described severe compulsive obsessive traits and experienced terror and panic frequently, as well as having urges to break things. (Tr. 544). He concluded that the plaintiff did have a bipolar disorder, by history, and post traumatic stress disorder as well as "rule out" undifferentiated somatoform disorder and "rule out" pain disorder. (Tr. 545). He assigned functional restrictions consistent with the hypothetical factors in the ALJ's question to the VE. (Tr. 548-49).

      The ALJ stated that he declined to accept the opinion of Dr. Shapiro, stating that the "final responsibility for deciding whether an individual is disabled . . . is reserved to the Commissioner." Second, he said that the plaintiff's "activities of daily living, including routine household chores, good relationship with her children, their teachers, boyfriend and family contribute to diminishing weight given Dr. Shapiro's opinion." Finally, he added that it appeared that the claimant had not seen Dr. Shapiro since 2006. (Tr. 24). He gave greater weight, instead, to the

11-102 Dorinda Brauntz

opinion of Mr. Kroger and non-examining psychologists who had reviewed the record. (Tr. 23-24).[1]

If the opinion of a treating source is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other evidence in the record, the Commissioner's regulations require that it be given controlling weight. 20 C.F.R. § 404.1527(d)(2). Even if the treating physician's opinion is not given controlling weight, "there remains a presumption, albeit a rebuttable one, that the opinion of the treating physician is entitled to great deference." Rogers v. Commissioner of Social Security, 486 F.3d 234 (6th Cir. 2007). Although a treating physician opinion may be unworthy of controlling weight, § 404.1527(d)(2) also requires that the Commissioner must "always give good reasons" for the weight given the treating source opinion. Social Security Ruling 96-2p explains that the reasons given "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." If the ALJ violates the regulations by failing to give good reasons for the rejection of a treating physician opinion, a remand is required even where substantial evidence supports the decision of the

---

[1] There do not appear to be any records from non-examining psychologists in the court transcript.

11

Commissioner.  Wilson v. Commissioner of Social Security, 378 F.3d 541, 544-45 (6th Cir. 2004).

In the present case, the reasons given by the ALJ for discounting Dr. Shapiro's opinion do not satisfy the regulation.  First, it was clearly erroneous to say that Dr. Shapiro had not seen the plaintiff since 2006.  There are more than two years of office notes from Dr. Shapiro and from Kellye Ledbetter after this date.  Nor does it appear that this statement could have been the result of a typographical error since there would be no reason to mention lack of recent treatment if all of the psychiatrist's office notes had been reviewed.  Clearly, this reason is inadequate because it merely gives a subsequent adjudicator, and the claimant, the impression that a large part of the evidence was overlooked.  Second, the ALJ's statement that responsibility for deciding whether an individual is disabled under the Social Security Act is "reserved to the Commissioner," while true, does not address the specific restrictions given by Dr. Shapiro in November, 2007, even if it at least partially addresses the August, 2007 letter and June, 2008 disability form.  The third reason, the plaintiff's activities of daily living, is also highly problematic.  There is some evidence to support the plaintiff's ability to manage a household, but a review of all of the evidence, especially including the post-2006 notes from Dr. Shapiro's office, indicate that the plaintiff had anything but a "good relationship" with her children, boyfriend, and family.  They speak, among other things, of arguments with her

11-102  Dorinda Brauntz

parents, worries that an ex-boyfriend was plotting against her, a statement that Child Protective Services was investigating her due to an abuse allegation, and her desire to bring her three-year-old child to counseling because he was "hyper" and "aggressive" and could easily hurt her baby.  (E.g., Tr. 375, 598-601).

The Commissioner asserts, essentially, that Dr. Shapiro's restrictions are not supported by all of the objective evidence, that Dr. Shapiro's notes inadequately document clinical findings and are mostly illegible, and that the plaintiff's "lifestyle choices" contributed to her problems. The Commissioner also asserts that there are internal inconsistencies in the notes.  The problem is that none of these reasons were provided by the ALJ in the decision, and as such, do not satisfy the rule set out in <u>Wilson</u>.  Accordingly, the decision will be remanded for further consideration of the treating source opinion.

This the 19th day of April, 2012.

Signed By:
<u>G. Wix Unthank</u>
**United States Senior Judge**